# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**JOHN GORE,**

    **Plaintiff**

**v.**                                                      **Civil Action No. _____**

**CSX TRANSPORTATION, INC.,**

    **Defendant**

_____ /

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

## **NATURE OF ACTION**

1. The Plaintiff, JOHN GORE, brings this action against the Defendant for violations of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. Section 20109. Plaintiff alleges retaliation in the form of harassment, intimidation, termination of employment and other discriminatory and illegal acts by Defendant.

## **JURISDICTION**

2. This Court has subject matter jurisdiction in this case pursuant to the Federal Rail Safety Act, 49 U.S.C. § 20109(d)(3) and 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is Jacksonville, Florida. Plaintiff maintains residence in Manatee County, Florida.

4. On July 29, 2019, Plaintiff timely filed an administrative claim under 49 U.S.C. § 20109 with the Occupational Safety and Health Administration's ("OSHA")

Region IV office in Atlanta, Georgia. More than 210 days have elapsed with no final decision, and Plaintiff therefore exercises his right to file an original action *de novo* pursuant to 49 U.S.C. § 20109(d)(3).

## PARTIES

5. The Plaintiff is a natural person and citizen of Manatee County, Florida employed by Defendant, CSX TRANSPORTATION, INC. ("CSX"), and working in or around Tampa, Florida.

6. At all times material, the Defendant was and is a rail carrier engaged in interstate commerce. CSX operates in 23 states including Florida, employs approximately 24,000 people, and is one of the nation's largest rail carriers. CSX maintains its corporate headquarters in Jacksonville, Duval County, Florida.

## STATEMENT OF OPERATIVE FACTS

7. Plaintiff, JOHN GORE, was employed by CSX for almost two decades up until May 31, 2019, when he was terminated.

8. Plaintiff was employed as A Remote-Control Operator ("RCO") Foreman by CSX and as such was in the scope and course of his employment engaged in movement and placement of rail cars ("kicking cars") in an active Remote Control Zone.

9. On April 16, 2019, Plaintiff was working on assignment Y19216 and tripped over an exposed rail spike. Plaintiff fell, striking his nose and chin on the rail of an adjacent track.

10. Proper notice of the injury was given to Plaintiff's supervisor and an injury report was filed with CSX.

11. On April 20, 2019, Plaintiff was assigned to the one-man remote-control foreman position of Y19220. Plaintiff had been switching cars in an active remote-control zone throughout his shift and implemented proper protections associated with such a zone.

12. During the process of kicking cars down the track, Plaintiff went into the shanty (shack) to rehydrate and change the radio batteries after which he would resume his duties. Windows occupied the circumference of the shanty providing Plaintiff the ability to see the train cars and the remotely-controlled locomotive at all times, thus not leaving them unattended.

13. Thereafter, Plaintiff was approached by his trainmasters who indicated that they had inspected the rail cars and found that a rail car approximately 15 cars down the track had not been coupled and that equipment had been left unattended.

14. CSX carried out an investigation on May 2, 2019, alleging that Plaintiff failed to secure equipment and to ensure the coupling of a rail car before leaving it unattended. Plaintiff was charged with a violation of CSX Transportation Rules 409.2, *"unattended equipment must be secured with sufficient tested handbrakes but not less than one"*; and Rule 408.2, *"prior to leaving trains and equipment unattended, secure with tested handbrakes or by alternative method specified in special instructions."*

15. Plaintiff avers that he attended to the rail cars and equipment at all times; however, physical limitations of the human body prevent every coupling from being readily apparent, especially where a rail car may be uncoupled further down the track behind several other rail cars. It is not unknown to CSX that this occurs. It is an excepted fact and one that is planned for in their own Operating Rules.  Hence the guidelines on how

to property line a switch: *"before lining a switch or derail, the employee must ensure…any preceding movement has passed the clearance point"*[1]; and, how to kick cars *"when kicking cars… do not cut off a car routed to an adjacent track until it is known that the preceding car is clear and will remain clear of adjacent tracks"*[2]. These rules are clearly written with the understanding that the Conductor performing the kicking move has no responsibility to ensure couplings are made, only that the next crew to enter that track must verify all couplings before commencing with their own work. At no point does CSX state that previously released equipment must couple before continuing on with the next move.

16. Plaintiff is an employee with almost two decades of service. This method of kicking cars down the track is the same method that was used day in and day out. CSX unjustifiably applied Operating Rules relative to the issue at hand by singling out, charging and subsequently dismissing Plaintiff as a response for reporting an on-the-job injury just two working shifts before the alleged failure to couple incident occurred.

## CAUSE OF ACTION

17. The Plaintiff repeats and incorporates by reference herein all the foregoing paragraphs as if fully set forth.

18. The Federal Railroad Safety Act, in 49 U.S. C. § 20109(a)(4) and its implementing regulations at 29 CFR § 1982 *et seq.,* states that a railroad engaged in interstate commerce may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee who provides information to the rail carrier or Secretary of Transportation of a work-related personal injury.

---

[1] CSX Operating Rule 401.2(2)
[2] CSX Operating Rule 405.6(4)

19. CSX knew that Plaintiff engaged in the protected activities as defined in 49 U.S.C. § 20109(a)(4) when Plaintiff notified his supervisor of the injuries and completed an injury report.

20. CSX retaliated against Plaintiff and subjected him to adverse actions subsequent to him engaging in the protected activities as defined in 49 U.S.C. § 20109(a)(4). Specifically, Plaintiff was removed from service on April 20, 2019, two working shifts after his injury, and terminated on May 31, 2019.

21. Plaintiff's engaging in the protected activities as defined in 49 U.S.C. § 20109(a)(4) was a contributing factor to the adverse actions lodged against Plaintiff.

## PRAYER FOR RELIEF

22. For these wrongs, Plaintiff requests all compensation and other relief, including declaratory relief, allowable at law for the harms inflicted upon him, as well as costs, attorneys fees, and any other relief, in an amount greater than $100,000.

23. Plaintiff specifically requests a judgment under 49 U.S.C. § 20109 for all relief appropriate under the circumstances, including but not limited to (a) compensatory damages including compensation for any special damages; (b) litigation costs including expert witness fees and reasonable attorney fees; and (c) punitive damages.

WHEREFORE, in order to encourage employees to freely report all injuries without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the Plaintiff demands a Judgment under the Federal Railroad Safety Act for all relief necessary to make him whole, including but not limited to:

- A. Expungement of all references to disciplinary action related to this matter;

- B. Lost wages and pay benefits with interest;

- C. Lost benefits with interest;

- D. Compensatory damages for economic losses due to Defendant's conduct;

- E. Compensatory damages for mental anguish and emotional distress due to Defendant's conduct;

- F. The statutory maximum of punitive damages; and

- G. Special damages for all litigation costs including expert witness fees and attorney fees.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 5, 2020

**WILKES & MEE, PLLC**

By: */s/ Alisa D. Wilkes*
Alisa D. Wilkes
FL Bar No. 0081747
13400 Sutton Park Dr. S. Suite 1204
Jacksonville, FL 32224
(904) 620-9545
alisa@wilkesmee.com
service@wilkesmee.com
**Trial Counsel for Plaintiff**